REED v. HUGHES TOOL CO.*

(Circuit Court of Appeals, Fifth Circuit. October 6, 1919. Rehearing Denied December 6, 1919.)

No. 3218.

1. PATENTS ⬯328—PATENT FOR WELL DRILLS VALID AND INFRINGED.

The Griffin patent, No. 1,195,209, and the Hughes patent, No. 1,124,241, each for a rotary well-boring drill, *held* not anticipated, valid, and infringed.

2. PATENTS ⬯82—VALIDITY OF PATENT NOT AFFECTED BY NONUSER.

The validity of a patent is not affected by nonuser of the patented device, if it has utility, in the sense of being capable of successful mechanical operation.

3. PATENTS ⬯240—IMPROVER CANNOT APPROPRIATE INVENTION OF PREDECESSOR.

An improver cannot appropriate the invention of his predecessor, who has obtained a patent, as a base for his improvement without infringement, even though the improvement has been patented.

Appeal from the District Court of the United States for the Southern District of Texas; Waller T. Burns, Judge.

Suit in equity by the Hughes Tool Company against Clarence E. Reed and others. Decree for complainant, and defendant named appeals. Affirmed.

C. A. Teagle, of Houston, Tex., Edwin T. Merrick, Ralph J. Schwarz, and Philip Gensler, Jr., all of New Orleans, La., and William F. Hall, of Washington, D. C., for appellant.

John A. Mobley and Jesse R. Stone, both of Houston, Tex. (Andrews, Streetman, Logue & Mobley, of Houston, Tex., on the brief), for appellee.

Before WALKER and BATTS, Circuit Judges, and GRUBB, District Judge.

PER CURIAM. This is an appeal from a decree of the District Court of the United States for the Southern District of Texas, Houston Division, in favor of the plaintiff (appellee), and against one of the defendants (appellant), establishing the validity of two certain patents sued on by the plaintiff, namely, patent No. 1,195,209, issued

---

⬯For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

*Certiorari denied 251 U. S. —, 40 Sup. Ct. 342, 64 L. Ed. —.

to T. J. Griffin on August 22, 1916, and patent No. 1,124,241, issued to Howard R. Hughes on January 5, 1915, and determining that the appellant, Clarence E. Reed, had infringed certain of the claims of each of the patents sued upon. The patents related to rotary boring drills used in the drilling of oil wells. The appellant alleged infringing device had also been patented by him.

The principal grounds upon which the validity of each of the two patents sued upon by the appellee were assailed by the appellant were that both had been anticipated by the prior art, and a number of prior patents were cited and relied upon by the appellant to show anticipation, and that the patents in suit had never been successfully and commercially exploited by appellee.

[1] One of the two patents sued on was issued to Thos. J. Griffin on August 22, 1916, and the other was issued to Howard R. Hughes on January 5, 1915. The application for the former was, however, filed on June 11, 1913, while that for the latter was not filed until November 1, 1913. The plaintiff was the owner of both patents when the bill was filed. The inventions covered by the patents consisted of a bit for drilling wells which had a cylindrical head with two cutting discs in the base of the head, the discs being offset relatively to the axis of rotation of the head, for the purpose of affording clearance to the bit. The claim of novelty was based on the arrangement of the cutter discs relatively to each other and the shape of the discs themselves. The plaintiff contended that this arrangement and shape of the discs performed the two functions of shearing off the material by the action of a sharp advancing edge and of pulverizing or disintegrating the sheared-off material by the action of a broad crushing face, curved to bear across the entire width of the bore hole, and which also prevented the rapid wearing away of the edge. The plaintiff contended that no such arrangement with corresponding functions existed in the prior art in boring drills.

The appellant relied upon a number of prior patents, some of which covered stone-dressing tools, and some rock-boring drills. We have examined these patents, as bearing upon the state of the prior art at the time the patents in suit were applied for. Probably what is designated as the Litaker patent comes nearer to anticipating the invention disclosed by the patents in suit than any of those cited and relied upon. An examination of the claims of that patent differentiates it from the Griffin and Hughes patents in suit, in that there is an absence in the Litaker discs of any crushing surfaces, such as are present in the discs of the Griffin and Hughes patents, and also an absence of any provision for the disintegrating of the material that is cut away by the action of the cutting discs, so that it can be removed in suspension by the water used for flushing.

The patents in suit have the feature peculiar to them of rotary revolving discs, so placed, formed, and operated as to make a hole with a cup-shaped bottom, which is deepened by cutting or shearing or scraping material from the sides and grinding it up in the bottom so fine that it can be removed in suspension from the drill by a flushing stream of water. The Litaker patent discloses a cutting disc that

261 F.—13

performs only the single function of cutting or shearing away the material from the bottom of the bore hole, and is without any provision for crushing or pulverizing the material as it is cut away in the operation of the device. The Litaker drill, according to the language of its claims, provides discs only as cutting elements and for the removal of the loosened material without crushing or disintegration before removal. Certainly in the art of well boring the patents in suit were the first that had this feature, and we think it has sufficient importance and novelty to give it the quality of invention, and that it was not anticipated by any of the earlier patents cited, including the Litaker patent.

[2] We conclude from the record that the bits constructed according to the Hughes and Griffin patents were physically operative devices capable of successful practical use. There is evidence that they had not been commercially developed, possibly because of their comparatively high cost, and the conservatism of well drillers. The validity of the patents is not affected by nonuser of the patented devices, if they have utility in the sense of being capable of successful mechanical operation. Continental Paper Bag Co. v. Eastern Paper Bag Co., 210 U. S. 405, 28 Sup. Ct. 748, 52 L. Ed. 1122; Lewis Machine Co. v. Premium Mfg. Co., 163 Fed. 954, 90 C. C. A. 310.

We conclude, as did the District Judge, that either the Griffin or the Hughes patent on each of which the plaintiff sued, was a valid patent.

Coming to the question of infringement, we think that the Reed drill was substantially identical in structure and functions with the drills of the patents in suit. It has a cylindrical head, with two cutting discs housed in slots in the base of the head, and arranged with an offset in the same manner as the devices of the patent in suit. The cutting discs are substantially the same, except that the edge of the Reed cutter is beveled. The Reed drill has an improvement upon the drills disclosed by the patents in suit, consisting of the closing of the slot at the rear edge of each of the cutting discs, thus affording a restricted passage for the flushing water, thereby preventing a clogging of the discs. It is conceded that this constitutes an improvement upon the drills covered by both the Griffin and Hughes patents. It is also true that a patent has been issued to Reed to cover this improvement. The Reed bit, however, appropriates for the base of this improvement the invention of the patents in suit.

[3] The law is settled that an improver cannot appropriate the invention of his predecessor, who has obtained a patent, as a base for his improvement, without the consent of the patentee, and without infringement, even though the improvement has become the subject matter of a patent. In the case of Cantrell v. Wallick, 117 U. S. 689, 6 Sup. Ct. 970, 29 L. Ed. 1017, the Supreme Court said:

"Two patents may both be valid, when the second is an improvement on the first, in which event, if the second includes the first, neither of the two patentees can lawfully use the invention of the other without the other's consent."

In the case of Cochrane v. Deener, 94 U. S. 780, 787 (24 L. Ed. 139), the Supreme Court said:

"The defendants admit that the process produced a revolution in the manufacture of flour, but they attribute that revolution to their improvements. It may be as they say, that it is greatly due to these. But it cannot be seriously denied that Cochrane's invention lies at the bottom of these improvements, is involved in them, and was itself capable of beneficial use, and was put to such use. It had all the elements and circumstances necessary for sustaining the patent, and cannot be appropriated by the defendants, even though supplemented by and enveloped in very important and material improvements of their own.".

In the case of Yancey v. Enright, 230 Fed. 641, 647, 145 C. C. A. 51, 57, this court said:

"The addition of an improving feature does not excuse the appropriation of the appellant's invention, covered by the patent, since we have construed the appellant's idea to be more than a mere improvement in form, and a distinct and valuable advance in the art."

As we are of the opinion that the patents in suit are valid patents and have been infringed by the appellant, the decree of the District Court appealed from is affirmed.

BATTS, Circuit Judge, did not take part in the decision of this case.